1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9    EDDIE BARTON,                              1:10-cv-00472-OWW-DLB (HC)

10                   Petitioner,               FINDINGS AND RECOMMENDATION
                                               REGARDING PETITION FOR WRIT OF
11           v.                                HABEAS CORPUS

12                                             [Doc. 1]
     JAMES D. HARTLEY,
13
                     Respondent.
14   _____/

15
16        Petitioner is a state prisoner proceeding pro se with a Petition For Writ Of Habeas Corpus

17   pursuant to 28 U.S.C. § 2254.

18                              BACKGROUND[1]

19        Petitioner is currently in the custody of the California Department of Corrections and

20   Rehabilitation (CDCR) following his convictions of second degree murder, assault with a deadly

     weapon, and battery with serious injury.  Petitioner is serving twenty years to life in prison.
21
22        In the instant petition, Petitioner does not challenge the validity of his conviction; rather,

23   he challenging the Board of Parole Hearings' (Board) October 1, 2008 decision finding him

     unsuitable for release.
24
25        On April 15, 2009, Petitioner filed a Petition For Writ Of Habeas Corpus in the San

26   Diego County Superior Court contending that the Board's 2008 decision was not supported by

27   _____

28        [1] This information is derived from the state court documents attached to Respondent's answer, which are
     not subject to dispute.

                                        1

1  some evidence.  On May 27, 2009, the superior court issued a reasoned decision and found some

2  evidence supported the Board's decision.

3  On September 1, 2009, Petitioner filed a habeas corpus petition in the state appellate

4  court. The petition was denied on October 30, 2009, in a reasoned decision finding some

5  evidence to support the Board's decision.

6  On November 19, 2009, Petitioner filed a Petition in the California Supreme Court,

7  which was summarily denied.

8  Petitioner filed the instant federal Petition For Writ Of Habeas Corpus March 18, 2010.

9  Respondent filed an answer to the petition on May 24, 2010, and Petitioner filed a traverse on

10  June 9, 2010.

11  <u>STATEMENT OF FACTS</u>

12  The commitment offense occurred when Petitioner and his coconspirators went to the

13  Hillcrest area in San Diego, known to be frequented by homosexual, gay men.  Petitioner and his

14  friends were known as skinheads and set out to commit a hate crime, targeting gay males.  On

15  December 13, 1991, at approximately 11:15 p.m., the first victim, Keith Keziah, was walking

16  toward the Hillcrest Coffee Shop when he was approached by Petitioner and his coconspirators.

17  Petitioner asked him if he dated, and the victim ignored him and crossed the street to avoid a

18  confrontation.  Petitioner and his friends continued to harass Mr. Keziah, and they became angry.

19  After not receiving a response, Petitioner grabbed Keziah by the shirt, swung him around, and

20  punched him in the face, breaking his nose.  Keziah ran away and sought assistance.

21  Approximately 15 minutes later, Petitioner and his coconspirators, approached victims, John

22  Wear and Brian Baird who were walking to the same coffee shop.  Mr. Baird greeted Petitioner

23  and his friend and he was suddenly without provocation struck in the nose.  Petitioner then began

24  attacking Mr. Wear, and Baird saw Petitioner pull a knife from Wear's stomach.  Petitioner then

25  told Wear, "don't cry, faggot" and started kicking him again.  As Baird moved to help Wear,

26  Petitioner turned and went towards him stating, "Do you want some? Do you want some?"

27  Petitioner then turned his back and crouched down stating, "No, I don't want anything.  I don't

28  even know you."  Petitioner then began hitting Baird in the head and kicking him in his back.

2

1   Baird later discovered that Petitioner had cut his head, and Petitioner told him, "You better run."

2   John Wear died two days later as a result of the wounds to his abdomen.  He also suffered

3   wounds to the right thigh and a superficial wound to his left buttocks.  Petitioner also suffered

4   blunt force trauma, including bruises and abrasions to his right check, left ear, chest area, right

5   forearm, and inside of both knees.  Petitioner was arrested in part because he bragged that he had

6   gotten into a fight with some homosexuals, and he stabbed one of them.

7                                    DISCUSSION

8   I.    Standard of Review

9          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

10  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

11  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

12  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

13  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

14  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

15  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

16  provisions.

17         Petitioner is in custody of the California Department of Corrections and Rehabilitation

18  pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state

19  court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because

20  he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass

21  v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v.

22  Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a

23  habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the

24  petition is not challenging [her] underlying state court conviction.'").

25         The instant petition is reviewed under the provisions of the Antiterrorism and Effective

26  Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

27  70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

28  adjudication of the claim "resulted in a decision that was contrary to, or involved an

                                          3

1    unreasonable application of, clearly established Federal law, as determined by the Supreme Court

2    of the United States" or "resulted in a decision that was based on an unreasonable determination

3    of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

4    § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

5          "[A] federal court may not issue the writ simply because the court concludes in its

6    independent judgment that the relevant state court decision applied clearly established federal

7    law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

8    A federal habeas court making the "unreasonable application" inquiry should ask whether the

9    state court's application of clearly established federal law was "objectively unreasonable." Id. at

10    409.   Petitioner has the burden of establishing that the decision of the state court is contrary to

11    or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

12    Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

13    states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

14    state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

15    Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

16    II.     Review of Petition

17          There is no independent right to parole under the United States Constitution; rather, the

18    right exists and is created by the substantive state law which defines the parole scheme.  Hayward

19    v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen,

20    482 U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing

21    Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v.

22    Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive

23    nature of the parole-release decision, state statutes may create liberty interests in parole release

24    that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S.

25    at 371.

26          In California, the Board of Parole Hearings' determination of whether an inmate is

27    suitable for parole is controlled by the following regulations:

28    ///

(a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to

demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

(1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at 609.  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state

court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public.  It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public."  In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'"  Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.      Last Reasoned State Court Decision

In the last reasoned decision of the California Court of Appeal, Fourth Appellate District, the court found some evidence supported the Board's decision, stating, in part:

There is some evidence to support the Board's decision.  For example, petitioner admitted he lied about his involvement in the crime through all of his prior proceedings.  Petitioner did not begin to take responsibility for his actions until his first Board report after incarceration.  Moreover, at the hearing petitioner stated that he had no idea that he stabbed the victim in the stomach, and maintained instead that the victim fell on the knife.  Later in the hearing, after questioning from the district attorney, petitioner admitted that he stabbed the victim and said, "[i]t's taken me a lot of years to come to that realization."  Finally, petitioner initially denied being a skinhead, but then later admitted that he has "grown up in the punk rock lifestyle on the fringes of the skinhead lifestyle," but downplaying it as a "fashion statement."[2]

Petitioner's evolving admissions about the crime and his statements at the hearing constitute some evidence supporting the Board's conclusion that he is currently dangerous  because he lacks credibility and insight, does not take responsibility, and minimizes his actions by changing his story. [citations.]

Furthermore, petitioner has received CDC Form 115[3] serious rules violations for attempting to smuggle escape paraphernalia in 2001, participation in a work stoppage in 1997, and possession of inmate-manufactured alcohol in 1995.  Petitioner has also received six CDC Form 128-A's for misconduct such as being out of bounds, and covering his window and light fixtures.  Petitioner's inability or unwillingness to follow prison rules supports the Board's decision that he is currently dangerous. [citation.]

Because we have concluded that there is some evidence to support these reasons for denying parole, we need not reach the Board's other grounds.  The Board properly provided petitioner an individualized inquiry into his suitability for parole, and some evidence supports the decision.

(Answer, Ex. 4, at 2-3) (footnotes in original.)

B.   2008 Parole Hearing

At Petitioner second parole hearing in 2008, the Board found Petitioner unsuitable based on several factors including, the circumstances of the commitment offense, trivial motive, lack of insight, escalating pattern of criminal conduct, equivocal psychological evaluation, and institutional misconduct.  As explained by the state appellate, some evidence supports the Board's finding that Petitioner remains an unreasonable risk to public safety if released based on the

///

---

[2] In our prior order denying habeas relief (D048475) we noted that petitioner stated "In my youth I was in the skinhead/punk rock movement . . ." and that he bears the tattoo "SKIN" on his left hand.

[3] A CDC Form 115 documents misconduct believed to be a violation of the law that is not minor in nature while a CDC Form 128 documents incidents of minor misconduct.  (*In re Gray* (2007) 151 Cal.App.4th 379, 389.)

1    commitment offense, lack of insight, and institutional misconduct, even without consideration of

2    the additional factors cited by the Board.

3    　　　Despite Petitioner's claim to the contrary, the commitment offense was a hate crime

4    targeted toward homosexual males.  Multiple victims were attacked solely because of their

5    sexual orientation, resulting in the death of one.  The victims were particularly vulnerable as they

6    were attacked suddenly by total strangers.  Petitioner made inconsistent statements at the hearing,

7    by initially claiming that the victim fell into the knife but later stating that he did indeed strike

8    the victim with the knife.  He also initially denied being a member of the skinheads gang but later

9    acknowledged that he was involved with the group.  Petitioner also never explained why he

10   intentionally went to the Hillcrest neighborhood carrying a knife and attacking several victims,

11   killing one and injuries the others.  Based on Petitioner's inconsistent statements at the 2008

12   hearing, the Board's finding that he has limited insight into the causative factors of the

13   commitment offense and was not credible provides some evidence that he remains a current

14   danger to public safety if released.  Simply stated, if Petitioner does not understand what sparked

15   his anger on the night of the commitment offense, there is no assurance that it will not happen

16   again.

17   　　　During his incarceration, Petitioner received three 115 Serious Rules Violation Reports,

18   the most recent in 2001 for attempting to smuggle escape paraphernalia (a map).  The prior two

19   place in 1995 for possession of inmate manufactured alcohol, and in 1997 for participation in a

20   work stoppage.  Petitioner suffered prior convictions involving alcohol and drugs, and at the time

21   the commitment offense took place Petitioner was an admitted alcoholic.  The fact that

22   Petitioner's alcohol abuse continued during his incarceration and he has been unwilling or unable

23   to follow the prison rules provides some evidence that he remains an unreasonable risk of danger

24   to society if released.[4]

25

26   　　　[4] The Board also considered that Petitioner has a prior history of violence including two juvenile
27   convictions for assault with a deadly weapon and assault and battery with serious injury.  As a juvenile, Petitioner
     was also convicted of residential burglary, possession of marijuana and public intoxication.  He also served time in
28   juvenile hall for joyriding after failing to return a motorcycle to his sister's boyfriend.  Thus, Petitioner had an
     escalating criminal history.

1  Based on the foregoing, there is some evidence to support the Board's decision finding

2  Petitioner an unreasonable risk to public safety if released, and the state appellate court's

3  decision was not an unreasonable determination of the some evidence standard, nor an

4  unreasonable determination of the facts in light of the evidence.

5  <u>RECOMMENDATION</u>

6  Based on the foregoing, it is HEREBY RECOMMENDED that:

7  1.  The instant petition for writ of habeas corpus be DENIED; and

8  2.  The Clerk of Court be directed to enter judgment in favor of Respondent.

9  This Findings and Recommendation is submitted to the assigned United States District

10  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

11  Local Rules of Practice for the United States District Court, Eastern District of California.

12  Within thirty (30) days after being served with a copy, any party may file written objections with

13  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

14  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

15  and filed within fourteen (14) days after service of the objections.  The Court will then review the

16  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

17  failure to file objections within the specified time may waive the right to appeal the District

18  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

19  IT IS SO ORDERED.

20  **Dated:**   **August 2, 2010**          /s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE

21
22
23
24
25
26
27
28